IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SETH F. L., | CV 21-106-BLG-KLD |
| Plaintiff, | |
| vs. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.

## I.    Procedural Background

Plaintiff protectively filed an application for disability insurance benefits on May 23, 2019, alleging disability since February 2, 2013 based on multiple impairments. (Doc. 9 at 293). Plaintiff later amended his alleged onset date to November 29, 2017, the date of an unfavorable decision on a prior application for disability benefits. (Doc. 9 at 21, 51). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 9 at 21-35, 185, 221). The Appeals Council denied Plaintiff's request for review, thereby

making the ALJ's decision dated February 23, 2021, the agency's final decision for purposes of judicial review. (Doc. 9 at 7-13). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which

exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

**B.    Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's

residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   <u>Discussion</u>

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of November 29, 2017 through December 31, 2019, his date last insured. (Doc. 9 at 24). At step two, the ALJ found that Plaintiff had two severe impairments: somatoform disorder and

vestibular imbalance. (Doc. 9 at 24). At step three, the ALJ found that Plaintiff did

not have an impairment or combination of impairments that met or medically

equaled any impairment described in the Listing of Impairments, 20 C.F.R. §§

404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 9 at 25).

The ALJ then found that Plaintiff had the residual functional capacity to

perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following

limitations:

> [H]e was able to walk and/or stand, in any combination, for 2 hours in an 8-
> hour workday. He was able to sit for 7 hours in an 8-hour workday. He was
> able to lift 10 pounds occasionally and less than 10 pounds frequently. The
> claimant was to never climb ladders, or scaffolds. He was to never crawl. He
> was to occasionally climb ramps and stairs. He was able to climb one [f]light
> of stairs with a handrail He was able to occasionally balance, stoop, kneel,
> and crouch as long as they can be done in a deliberate manner (slow and
> calculated). The claimant was to avoid concentrated exposure to extreme
> cold and vibrations. He was to avoid moderate exposure to hazards such as
> open/dangerous machinery or unprotected heights. He was unable to drive a
> motor vehicle as part of his job duties.

(Doc. 9 at 27). At step four, the ALJ determined that Plaintiff was unable to

perform any past relevant work. (Doc. 9 at 32). Proceeding to step five, the ALJ

found based on the vocational expert's testimony that there were other jobs

existing in significant numbers in the national economy that Plaintiff could

perform. (Doc. 9, at 34).

Plaintiff argues the ALJ's decision is not supported by substantial evidence,

and raises several issues on appeal. First, Plaintiff maintains the ALJ improperly assessed the medical opinion evidence. Second, Plaintiff contends the ALJ erred by finding his medical impairments did not meet or equal the criteria of Listing 12.07 for somatic disorders. Third, Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting his testimony as to the severity of his symptoms and limitations. Finally, Plaintiff argues the ALJ erred by relying on vocational expert testimony elicited in response to an incomplete hypothetical. The Court addresses these arguments in the order set forth below.

### A.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discrediting his testimony as to the severity of his symptoms and limitations. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his

symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

   If the ALJ provides at least one valid reason to discount the claimant's testimony, any error in the remaining reasons is harmless. See e.g. *Joshua P. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) (citing *Sims v. Berryhill*, 704 App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's adverse credibility determination because the ALJ "provided at least one clear and convincing reasons supported by substantial evidence for rejecting [it] as not credible") and *Gillian v. Saulk* 821 F. App'x 798, 799 (9th Cir. 2020) (if the ALJ provides "at least one valid reason to discount [a claimant's symptom] testimony, error in the remaining reasons is harmless"). "There is, however, one important caveat to this rule: A lack of supporting medical evidence cannot be the only valid reason provided for discounting a claimant's testimony." *Joshua P.*, 2021WL 4330858, at *3 (citing *Valdez v. Berryhill*, 746 F.App'x 676, 677 (9th Cir. 2018) (stating that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason"). See also *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

   Here, the ALJ found that Plaintiff met his initial burden because he produced evidence of medically determinable impairments that could reasonably be expected

to cause his alleged symptoms. The ALJ then found that Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 9 at 30).

In August 2019, Plaintiff completed a function report on which he stated that he has no sense of balance or depth perception, falls every day, cannot drive, uses a cane, and has other physical limitations including difficulty walking, seeing, lifting, bending, reaching, and climbing stairs. (Doc. 9 at 333-341). In February 2020, Plaintiff completed a second function report similarly indicating that he is unable to pay attention for very long, cannot stand for long, cannot walk more than a quarter of a block without stopping to rest, uses a cane, and has difficulty walking straight, carrying weight, and climbing stairs. (Doc. 9 at 364-372). At his administrative hearing in December 2020, Plaintiff testified that he loses orientation and has a bad fall one or twice a week, is not able to walk more than a block and half without stopping to rest, and is unable to drive. (Doc. 9 at 59, 70, 74).

The ALJ discounted Plaintiff's testimony for several reasons, at least one of which is clear and convincing and supported by substantial evidence. The ALJ began by summarizing Plaintiff's testimony, and acknowledged that he had a long

history of vestibular imbalance following a head injury in 2014 as well as a history of somatoform disorder dating back to 2018. (Doc. 9 at 28). As the ALJ noted while discussing the medical records and evaluating Plaintiff's credibility, however, there were significant gaps in Plaintiff's medical treatment. (Doc. 9 at 29).

For instance, the ALJ found it significant that for at least three months after the prior unfavorable ALJ decision in November 2017, Plaintiff did not require any medical treatment for his allegedly disabling impairments. (Doc. 9 at 29). Much of the medical evidence that is part of the record is from the period before November 2017. (Doc. 9 at 421-788). The record reflects that Plaintiff saw his treating family practitioner, Dr. Erica Seas, with varying frequency between August 2013 until October 2019. (See e.g. Doc. 9 at 431, 997-1001,1224-1271). Although Plaintiff alleges disability since November 2017, it does not appear that he saw Dr. Seas or any other medical provider for treatment of his allegedly disabling impairments after the prior adverse decision in November 2017 until May 2018, when he returned to Dr. Seas for another routine follow up visit. (Doc. 9 at 1232-1240).

The ALJ also cited a nearly year-long gap in Plaintiff's treatment between October 2019 and September 2020 as a basis for discounting Plaintiff's testimony. (Doc. 9, at 29). In August 2018, Plaintiff had a three-year follow up visit with Dr.

Jeffrey Mosser, the neurologist who treated Plaintiff in 2014 and 2015 following his brain injury. (Doc. 9 at 1304-1328). At the follow up visit in August 2018, Dr. Mosser ordered an MRI that showed no acute intracranial abnormalities and no significant changes from Plaintiff's prior MRI in December 2014, and also referred Plaintiff to Dr. James English for a neuropsychological evaluation. (Doc. 9 at 1304, 1324-1328).

As discussed in more detail below, Dr. English conducted the neuropsychological evaluation on January 30, 2019, and diagnosed Plaintiff with a somatoform disorder. (Doc. 9 at 1338-1347). Approximately three months later, on May 7, 2019, Plaintiff had an appointment with Dr. Seas to discuss the results of Dr. English's evaluation. (Doc. 9 at 1250-56). Dr. Seas remarked on the fact that Dr. English had diagnosed Plaintiff with a somatoform disorder, including his determination that Plaintiff was not malingering, and explained that the plan was "to pursue psychological interventions aggressively now that we have a diagnosis." (Doc. 9 at 1250). Dr. Seas started Plaintiff on Cymbalta, and he returned for a routine follow up visit on May 28, 2019. (Doc. 9 at 1256).

Although Dr. Seas had contemplated aggressive psychological intervention, she did not see Plaintiff again until October 1, 2019, when he sought treatment for cold-like symptoms. (Doc. 9 at 1262). There are no additional medical records

from Dr. Seas, and it appears that Plaintiff did not seek or receive treatment for his allegedly disabling impairments again until September 2020, when he began treating with Dr. Jon Bullman. (Doc. 9 at 1369-1370). The ALJ cited this nearly year-long gap in Plaintiff's treatment between October 2019, when he last saw Dr. Seas for cold-like symptoms, and September 2020, when he apparently began treating with Dr. Jon Bullman, as a reason for discounting Plaintiff's testimony as to the severity of his symptoms and limitations. (Doc. 9 at 29).

An ALJ may consider unexplained gaps in treatment when evaluating a claimant's subjective symptom testimony. See e.g. *Roberts v. Berryhill*, 734 Fed. App'x 489, 491 (9th Cir. 2018) (stating that "unexplained gaps in treatment may support an ALJ's credibility determination"); *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (finding the ALJ permissibly considered a gap in treatment when assessing the claimant's subjective symptom testimony); *Finale v. Astrue*, 322 Fed. App'x 566, 567 (9th Cir. 2009) (recognizing that "significant gaps in medical treatment" may constitute a clear and convincing reason to discount a claimant's credibility); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ properly relied on a treatment gap of approximately three to four months in partially discrediting the claimant's testimony).

Here, the ALJ reasonably found the fact that Plaintiff did not seek medical treatment for months at a time during the relevant period undercut his subjective testimony as to the debilitating extent of his symptoms and limitations. (Doc. 9 at 29). Plaintiff does not challenge the ALJ's observation that there were gaps in his medical treatment, and does not assert that those gaps were due to an inability to afford treatment or for any other reason that might explain why he did not seek treatment during these periods. See *Orn v. Astrue*, 495 F.3d 625, 636-38 (9th Cir. 2007) (explaining that "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds"). Near the end of the administrative hearing on December 9, 2020, Plaintiff's counsel advised the ALJ that he did not have any additional records to submit, and did not need the ALJ to hold the record open for any additional period of time. (Doc. 9 at 84). Accordingly, the Court finds the ALJ properly cited gaps in Plaintiff's treatment as a basis for discounting his subjective symptom testimony.

The ALJ also found that the objective medical evidence did not fully support Plaintiff's subjective complaints. (Doc. 9 at 28). While the ALJ agreed there was sufficient evidence demonstrating that Plaintiff's somatoform disorder and vestibular imbalance were severe impairments, the ALJ noted that Plaintiff's routine physical examination findings were typically normal and he often

13

presented to medical providers ambulating without the use of an assistive device. (Doc. 9, at 29). For example, as the ALJ discussed, between May 2018 and October 2019 Dr. Seas often remarked that Plaintiff was alert, oriented, and in no acute distress and her physical examination findings were largely normal. (Doc. 9, at 29, 1236, 1244, 1247-48, 1253, 1266). And as further noted by the ALJ, physical examination findings during a follow up visit with a different provider in April 2018 after a hand injury were similarly benign. (Doc. 9 at 29, 916).

While these are relatively cursory routine findings, they nevertheless support the ALJ's reasoning that if Plaintiff were as limited alleged, even such routine medical examination findings would consistently reflect more significant abnormalities, particularly with respect to Plaintiff's vestibular imbalance impairment. See *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). In addition, while the ALJ found that Plaintiff's somatoform disorder was a severe mental impairment, during his discussion of the medical evidence he cited Plaintiff's lack of psychiatric treatment and noted that Dr. Seas' mental status examination findings were unremarkable. (Doc. 9 at 31). The ALJ permissibly

found that Plaintiff's allegations as to the severity of his symptoms and limitations were not fully supported by the objective medical evidence.

The ALJ also noted that, contrary to Plaintiff's testimony that he uses a cane to walk and falls frequently, Dr. Seas did not describe him using an assistive device to walk and he has not sought emergency room treatment for falls. (See e.g. Doc. 9 at 29, 1224-1271). While Plaintiff did present with a cane once, for the consultative neuropsychological evaluation with Dr. English on January 30, 2019 (Doc. 9 at 853), the ALJ reasonably found the fact that Plaintiff did not use a cane when attending medical appointments with his longtime treating physician undercut his testimony that he uses a cane to walk.

The ALJ also cited evidence of Plaintiff's daily activities as a basis for discounting his subjective symptom testimony. An ALJ may consider inconsistences between the claimant's testimony and the claimant's daily activities when evaluating subjective symptom testimony. See e.g. *Tommasetti v. Astrue*¸ 533 F.3d 1035, 1039 (9th Cir. 2008); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, the ALJ found that despite Plaintiff's "imbalance impairment, [he] was able to engage in robust activities of daily living during the relevant period." (Doc. 9 at 29). Specifically, the ALJ noted that Plaintiff reported caring for his five year old son, listening to audiobooks, watching television, preparing

15

simple meals, paying bills, handling a saving account, performing household

chores, shopping in stores, visiting friends, and attending medical appointments.

(Doc. 9 at 29, 335-340, 365-371).

The Court disagrees with the ALJ's description of these activities as

"robust," and fails to see how activities like watching television and attending

medical appointments are inconsistent with Plaintiff's description of his symptoms.

But even assuming this particular reason is not supported by substantial evidence,

as discussed above the ALJ provided at least two other reasons, both of which are

supported by substantial evidence, for finding Plaintiff less than entirely credible.

Because the ALJ provided at least one clear and convincing reason supported by

substantial evidence for discounting Plaintiff's subjective symptom testimony, any

error with respect to the remaining reasons provided by the ALJ is harmless. See

*Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's

opinion discounting the claimant's testimony because the ALJ "provided at least

one clear and convincing reason supported by substantial evidence for rejecting

[the] testimony as not credible").

## B.     Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the medical opinion

evidence. For all claims filed after March 27, 2017, the Social Security

Administration has amended the rules regarding the evaluation of medical opinion evidence at the administrative level. 20 C.F.R. § 404.1513(a)(2). Because Plaintiff filed his claim for disability benefits in May 2019, the amended regulations apply in this case.

The amended regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

While the new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. See *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. Apr. 2022) (even under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported

by substantial evidence"); *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020). The "new regulations still require the ALJ to explain his or her reasoning to specifically address how he or she considered the supportability and consistency of the medical opinion." *Brandee M.*, 2021 WL 2781803, at *3 (citing 20 C.F.R. §§ 404.1520c, 416.920c). While the ALJ must explain how he considered the supportability and consistency factors in the decision, the ALJ is not generally required to explain how he considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2).

      1.   <u>Dr. Bullman</u>

Plaintiff argues the ALJ overlooked an opinion provided by Dr. Jon Bullman. (Doc. 11 at 11). Dr. Bullman started providing care for Plaintiff in September 2020. (Doc. 9 at 1369). A few weeks later, on October 22, 2020, Dr. Bullman wrote a letter in support of Plaintiff's application for disability benefits. (Doc. 9 at 1369). Dr. Bullman wrote that during an appointment that day, Plaintiff reported falling one to two times a week, feeling off balance, and experiencing headaches and dizziness. (Doc. 9 at 1369). Dr. Bullman explained that he had reviewed Plaintiff's medical records, and opined that Plaintiff "is unable to work in any meaningful capacity and is therefore disabled." (Doc. 9 at 1370).

The ALJ considered Dr. Bullman's opinion, but found it unpersuasive in part

because his conclusion that Plaintiff "is unable to work in any meaningful capacity and therefore is disabled" addressed an issue that is reserved for the Commissioner. (Doc. 9 at 32). A statement by a medical source that a claimant is unable to work is an opinion on an issue reserved to the Commissioner and is not a medical opinion. 20 C.F.R §§ 404.1527(d), 416.927(d). But the fact that a medical opinion addresses an issue reserved to the Commissioner is not by itself a sufficient reason for rejecting that opinion. See *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (concluding the ALJ erred by failing to consider an examining psychologist's opinion that the claimant's impairment "makes the likelihood of sustained full time competitive employment unlikely"); *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). The ALJ is still required to "consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 95-5p, 1996 WL 374183, at *2 (July 2, 1996).

The ALJ also found that Dr. Bullman's opinion was not persuasive because he relied on Plaintiff's "'plethora of symptoms' despite acknowledging that [Plaintiff had] no physical evidence to support [his] symptoms." (Doc. 9 at 32). When Dr. Bullman wrote his letter opinion in October 2020, he had only been treating Plaintiff for approximately one month. Dr. Bullman did not identify any

19

specific objective evidence to support his statement that Plaintiff was disabled and did not identify any specific physical or mental limitations. Notably, the record does not contain any of Dr. Bullman's treatment notes or medical examination findings. Although Dr. Bullman did not believe based on his review of the medical records that Plaintiff was malingering, he acknowledged that the symptoms Plaintiff reported were not supported by the physical evidence, and noted that neurological testing had revealed only very minimal findings of impaired cognition. (Doc. 9 at 1272).

The ALJ permissibly found Dr. Bullman's opinion that Plaintiff was disabled unpersuasive not only because it addressed an issue reserved to the Commissioner, but also because it was not supported by objective evidence.

2.    Dr. English

Plaintiff next contends that the ALJ erred by not giving more weight to the January 30, 2019 consultative examination report by neuropsychologist Dr. James English. As part of his neuropsychological evaluation, Dr. English elicited a history of Plaintiff's reported symptoms, reviewed the medical records, and administered several neuropsychological tests. (Doc. 9 at 1338-1347). Dr. English determined that Plaintiff had average intellectual abilities with only mild slowing noted in cognitive processing speed. (Doc. 9 at 1346). He found that Plaintiff's

memory, verbal and visual reasoning, and motor performance all fell within a normal range. (Doc. 9 at 1346). Dr. English observed that Plaintiff's "symptom reporting far exceeds actual findings on cognitive tests," but did not believe Plaintiff was malingering because his "symptom etiology is considered to be unconscious rather than intentionally produced." (Doc. 9 at 1346). Dr. English noted that Plaintiff had a number of symptoms that were medically unexplained, and diagnosed him with somatic symptom disorder. (Doc. 9 at 1346-47).

Consistent with Dr. English's evaluation, the ALJ found that Plaintiff's somatic symptom disorder was a severe impairment. (Doc. 9 at 24). As evidenced by his discussion of the medical opinion evidence, the ALJ found Dr. English's evaluation persuasive. (Doc. 9 at 32). The ALJ cited Dr. English's clinical examination findings, and noted that he did not identify any limitations in Plaintiff's ability to understand, remember, apply information, interact with others, concentrate, persist, maintain pace, or adapt or manage himself. (Doc. 9 at 32, 1346-1347). The ALJ reasonably found that Dr. English's examination findings demonstrated no more than mild limitations in Plaintiff's "ability to understand, remember, apply information, interact with others and adapt or manage himself," and "moderate limitation[s] in his ability to concentrate, persist, maintain pace, and adapt or manage himself during the period under consideration." (Doc. 9 at 32).

Plaintiff maintains generally that the ALJ failed to adequately consider evidence provided by Dr. English (Doc. 11 at 11, 12), but does not identify any specific error in the ALJ's evaluation of Dr. English's opinion. Contrary to Plaintiff's argument, the ALJ adequately considered Dr. English's opinion and in fact credited many of his clinical findings, including his diagnosis of a somatic symptom disorder.

3.   <u>Other Medical Providers</u>

Plaintiff further argues the ALJ failed to properly evaluate medical evidence provided by Dr. Seas, Dr. Mosser, and Dr. Kimberly Meier. As mentioned above, Dr. Seas is a family practitioner who saw Plaintiff on a relatively regular basis between August 2013 and October 2019. (Doc. 9, at 431, 997-1001, 1224-1271). As further mentioned above, Dr. Mosser is the neurologist who treated Plaintiff in 2014 and 2015 after his brain injury. Dr. Mosser performed a follow-up MRI in August 2018, which showed no acute intracranial abnormalities and no significant changes from Plaintiff prior MRI in December 2014. (Doc. 9 at 1298-1318). Dr. Meier is a chiropractor who saw Plaintiff a handful of times in 2018 and 2019. (Doc. 1371-1372).

To the extent Plaintiff summarizes the medical records from these three providers and contends the ALJ should have given more weight to various

treatment notes, he has not shown that the ALJ erred. An ALJ is not required to discuss every treatment note in the record. See *Schmitz v. Saul*, 857 Fed. Appx 368 (9th Cir. May 21, 2021) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Treatment notes generally do not constitute medical opinions that the ALJ is required to weigh. See 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

Plaintiff does not explain the significance of any particular treatment note or point to any specific functional imitations identified in the treatment notes that he claims the ALJ should have incorporated into the residual functional capacity. See *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions."); *Merritt v. Colvin*, 572 Fed. Appx. 468, 470 (9th Cir. 2014) (concluding the ALJ did not err by failing to fully discuss a doctor's examinations records because the claimant did not point to any particular record

from the doctor that would establish the existence of work-related limitations).

Accordingly, Plaintiff has not shown that the ALJ erred in his evaluation of the

medical evidence.

### C.     Listed Impairments

Plaintiff maintains the ALJ erred by finding he did not meet or equal the

criteria of Listing 12.07 for somatic symptom and related disorders. At step three,

the ALJ must assess whether the claimant has an impairment or combination of

impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt.

P, App. 1. "If the claimant meets or equals one of the listed impairments, a

conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172,

174 (9th Cir. 1990).

To meet the requirements of a listing, the claimant "must have a medically

determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R.

§ 404.1525(d). To demonstrate medical equivalence, the claimant must have

impairments, considered alone or in combination, that are "at least equal in

severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.

1526(a). The burden at step three remains with the claimant, who must present

medical evidence that her impairments meet or medically equal all of the criteria of

a listed impairment. See *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

The "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). However, the Ninth Circuit does not require that the ALJ discuss evidence in a particular section of the written decision. See *Lewis*, 236 F.3d at 513. Thus, if the ALJ fails to make detailed findings at step three, the court will not reverse provided the ALJ adequately discusses the evidence and makes sufficiently detailed findings in other portions of the decision. See e.g. *Kruchek v. Barnhart*, 125 Fed. Appx. 825, 827 (9th Cir. 2005) (upholding the ALJ's step three determination where he adequately analyzed the evidence in the rationale section of the decision); *Harris v. Astrue*, 2009 WL 801347, at *7 (N.D. Cal. Mar. 25, 2009) (the ALJ's evaluation of the evidence at step four supported the ALJ's step three determination).

Here, the ALJ considered whether Plaintiff's impairments met or equaled the criteria of Listing 12.07 for somatic symptom and related disorders. (Doc. 9 at 25-27). Section 12.00 in the Listing of Impairments concerns mental disorders. 20 C.F.R. § 404 app. 1. To satisfy Listing 12.07, a claimant must have a mental disorder that meets the requirements of both paragraphs A and B. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.07. Paragraph A requires:

> Medical documentation of one or more of the following: (1) Symptoms of altered voluntary motor or sensory function that are not better explained by

another medical or mental disorder; (2) One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or (3) Preoccupation with having or acquiring a serious illness without significant symptoms present."

Paragraph B requires "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) Understand, remember, or apply information[;] (2) Interact with others[;] (3) Concentrate, persist, or maintain pace[;] (4) Adapt or manage oneself[]." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07. An extreme limitation is an inability to function independently, appropriately, effectively, and on a sustained basis, and a marked limitation is a seriously limited ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(d)-(e).

The ALJ considered the Paragraph B criteria, but found that Plaintiff had only (1) mild limitations in understanding, remembering, or applying information; (2) mild limitations in interacting with others; (3) moderate limitations in concentrating, persisting, or maintaining pace; and (4) mild limitations in adapting or managing himself. (Doc. 9 at 26).

Plaintiff argues that in making these findings, the ALJ did not give sufficient weight to his subjective symptom testimony and failed to properly consider the medical opinion evidence. As discussed above, however, the ALJ provided clear

and convincing reasons for discounting Plaintiff's subjective symptom testimony, and properly evaluated the medical evidence.

Contrary to Plaintiff's argument, the Court finds that there is substantial evidence in the record to support the ALJ's evaluation of the four paragraph B criteria. The ALJ based his findings in part on Plaintiff's daily activities, which included performing simple household chores, preparing meals, paying bills, attending medical appointments, shopping, reading, listening to audiobooks, caring for his son, and spending time with family and friends. (Doc. 9 at 26, 335-340, 365-371) The ALJ also cited mental status examination findings consistently reflecting that Plaintiff had a normal memory, was in no acute distress, had a normal mood and affect, was alert and oriented with an average attention span, and had intact judgment and a logical thought process. (Doc. 9 at 26, 1190, 1230, 236, 1244, 1247, 1253, 1266, 1333, 1356, 1364). Plaintiff's statements about his daily activities and the mental status examination findings in the record support the ALJ's findings that Plaintiff had mild to moderate limitations in the four functional areas described in paragraph B. The ALJ's paragraph B findings are also supported by the results of Dr. English's neuropsychological evaluation, which the ALJ addressed in his discussion of the medical opinion evidence and considered

persuasive. (Doc. 9 at 1338-1347). The Court therefore concludes the ALJ step three determination is supported by substantial evidence.

### D.    Vocational Expert

Plaintiff argues the ALJ did not adequately account for all of his limitations in the residual functional capacity assessment, and erred by finding him not disabled at step five of the sequential evaluation process.

As discussed above, however, the ALJ properly evaluated Plaintiff's subjective testimony and the medical evidence. The ALJ found the prior administrative medical findings of non-examining state agency physicians Dr. Tim Schofield and Dr. Marsha McFarland persuasive. (Doc. 9 at 30-31). Based on their review of the medical records discussed above, the state agency physicians identified physical and mental limitations consistent with ability to perform a limited range of sedentary work. (Doc. 9 at 175-84 ). The ALJ's residual functional capacity assessment is supported by substantial evidence, including the opinions of the state agency physicians and the medical evidence of record.

The ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found

based on the vocational expert's testimony that Plaintiff was not disabled at step five.

## IV.   <u>**Conclusion**</u>

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 30th day of March, 2023

_____
Kathleen L. DeSoto
United States Magistrate Judge

29